IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PRODUCER CAPITAL FUND LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-03130-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| LAZARUS FILMS LLC, BLUE NINJA, | ) | |
| PRODUCTIONS LLC, BIG MONSTER | ) | |
| ENTERTAINMENT LLC, JESSIKA | ) | |
| AUERBACH, JASON AUERBACH, | ) | |
| SCOTT DUTHIE, RUDY VEGLIANTE, | ) | |
| and GREEN LEAF PRODUCTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on defendants Big Monster Entertainment LLC ("Big Monster"), Blue Ninja Productions LLC ("Blue Ninja"), Green Leaf Production, Inc. ("Green Leaf"), and Rudy Vegliante's ("Vegliante") (collectively, "defendants")[1] motion to dismiss, ECF No. 49, Green Leaf's motion to dismiss, ECF No. 55, and defendants' motion to dismiss cross-claim, ECF No. 61. For the reasons set forth below, the court grants the motions to dismiss the complaint, ECF Nos. 49 and 55, and the motion to dismiss the cross-claim, ECF No. 61.

---

[1] The court acknowledges that Lazarus Films LLC, Jessika Auerbach, Jason Auerbach, and Scott Duthie are also defendants in this action. However, these defendants did not join the other defendants in filing a motion to dismiss but instead filed a cross-claim. Therefore, for the purposes of this order, the court will refer to defendants Big Monster, Blue Ninja, Green Leaf, and Vegliante as "defendants", and defendants Lazarus Films LLC, Jessika Auerbach, Jason Auerbach, and Scott Duthie as "cross-claimants."

1

## I. BACKGROUND

This case arises out of a financing dispute related to the funding of a television production known as "Mission Resolve." Plaintiff Producer Capital Fund LLC ("Producer Capital") is the lender to defendant/cross-claimant Lazarus Films LLC ("Lazarus Films"), the company that undertook the Mission Resolve film project. Blue Ninja and Big Monster are both companies that guaranteed performance of the loan that Lazarus Films entered into with Producer Capital. Green Leaf is a corporation that is a member of Blue Ninja. Jessika and Jason Auerbach, Scott Duthie, and Vegliante are allegedly all managers of Lazarus Films, Blue Ninja Productions, and Big Monster Entertainment. Vegliante is also allegedly the CEO of Green Leaf.

On January 12, 2016, Producer Capital made a loan to Lazarus Films, under which Lazarus Films agreed to pay $384,408.25 and to transfer tax credits under the Pennsylvania Film Tax Credit Incentive Program by October 1, 2016. As further security for the loan, Lazarus Films, Blue Ninja, and Big Monster agreed to give Producer Capital the right, title, and interest in the Mission Resolve television program and the tax credits issued by the Pennsylvania Film Tax Credit Incentive program. Under this agreement, Producer Capital would also receive all film equipment, audio visual equipment, cameras, lighting, and proprietary materials defined as "Film Collateral and Copyright and Tax Credit Collateral" in the loan documents. Producer Capital alleges that defendants and cross-claimants have defaulted under the terms of the agreement. Producer Capital brought this suit to recover the rights to the collateral that it believes it is owed under the Note—the rights to the Mission Resolve television production and the Pennsylvania tax credits.

Defendants[2] and cross-claimants initially brought various motions to dismiss after Producer Capital filed its complaint. ECF Nos. 16, 18, 20, 23. After the issue was fully briefed, the court held a hearing on April 17, 2018, during which it granted the motions due to lack of personal jurisdiction and gave leave to Producer Capital to file an amended complaint to clarify each defendant's relationship to South Carolina and establish jurisdiction. Producer Capital had also filed a motion for a preliminary injunction, but the court found it to be moot given the lack of jurisdiction. On July 20, 2018, Producer Capital filed an amended complaint and added Green Leaf as a defendant. ECF No. 46. Then defendants brought another motion to dismiss for lack of personal jurisdiction, failure to state a claim, and absence of an indispensable party on August 1, 2018.[3] ECF No. 49. On August 23, 2018, Green Leaf also brought a motion to dismiss, which is largely duplicative of defendants' motion. ECF No. 55. Producer Capital responded to both motions in separate but largely duplicative pleadings on August 29, 2018. ECF Nos. 57, 58.

In addition, after Producer Capital filed its amended complaint, cross-claimants brought a cross-claim against defendants alleging unjust enrichment and seeking a declaratory judgment, equitable indemnification, and conversion for equipment purchased for the Mission Resolve project.[4] ECF No. 56. Defendants filed a motion to

---

[2] Excluding Greenleaf. Greenleaf was not an original party to the case.
[3] Greenleaf is included as a movant in this motion, despite the fact that it also separately filed an individual motion to dismiss.
[4] Cross-claimants mention that defendants filed a related action in Pennsylvania state court on April 6, 2018: Green Leaf Productions, Inc. v. Lazarus Films LLC, Jessika Auerbach, and Blue Ninja Productions. Cross-claimants explain that defendants failed to mention this despite the fact that the hearing before this court was on April 17, 2018. Cross-claimants allege that this suit is an "end-around" in an attempt to address the issues raised in the cross-claim. ECF No. 68 at 4.

dismiss the cross-claim on September 12, 2018. ECF No. 61. Cross-claimants responded on October 8, 2018, ECF No. 68, and defendants replied on October 15, 2018, ECF No. 71. The court held a hearing on the three motions on January 9, 2019. The motions are now ripe for the court's review.

## II. STANDARD

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) [] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. DISCUSSION

**A. Motions to Dismiss Complaint**

The two motions to dismiss the amended complaint are largely the same and reiterate arguments made during the first round of motions to dismiss. Because Green Leaf's motion is nearly identical to defendants' motion and Green Leaf is also one of defendants, the court will refer to the arguments as belonging to defendants. First, defendants argue that the court has no jurisdiction over them. Next, they argue that Producer Capital failed to state a claim due to the invalidity of the purported guaranty agreement, and even if the agreement were valid, it requires arbitration in California. Defendants then argue that Producer Capital did not plead the fraud allegations with sufficient particularity. In defendants' final and new argument, they argue that (1) Producer Capital did not seek leave from the court to add Green Leaf as a party, as the court only gave Producer Capital permission to amend its complaint with regard to jurisdictional deficiencies; and (2) relief is possible for all parties in existing litigation in Pennsylvania, so the amended complaint should be dismissed.

Because jurisdiction is required to address defendants' other arguments, the court will consider jurisdiction first. In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion

of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). Consequently, the only question before the court is whether the exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945). Due process is satisfied if the courts asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

Personal jurisdiction over a nonresident defendant can be either specific or general. ESAB Group, Inc., 126 F.3d at 623–24. Producer Capital concedes that there is no general jurisdiction over defendants. ECF No. 58 at 7. Specific jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466

U.S. 408, 414 (1984). Defendants argue that the court has no specific jurisdiction over them. The court agrees.

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–216 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

The first prong of the Nolan test for specific jurisdiction concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. Burger King, 471 U.S. at 475. Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements. Id. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").

Producer Capital contends that defendants have met the purposeful availment prong because the performance of the guaranty agreement was to take place in South Carolina, and defendants, specifically mentioning Vegliante, contacted Producer Capital,

7

a resident of South Carolina. ECF No. 58 at 8. However, as with its original complaint, Producer Capital's amended complaint simply does not contain sufficient details for the court to determine if defendants purposefully availed themselves of the benefits and protections of South Carolina law.

The Fourth Circuit has relied on several nonexclusive factors to determine whether a defendant has purposefully availed itself of a forum in the context of a business relationship, including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). Sporadic business activity within the forum state, including the existence of a guaranty agreement or a payment made within a state, "do not amount to purposeful availment of the privilege of conducting activities within" the forum state. Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 837 (D.S.C. 2015); see also State Bank of Alleghenies v. Hudnall, 1995 WL 469446, at *2 (4th Cir. Aug. 9, 1995) ("[T]he mere execution of a guaranty does not invariably subject one to personal jurisdiction in a foreign forum."). However, the execution of a guaranty agreement coupled with additional activity within the forum state can be enough contact to establish specific jurisdiction. For example, in CresCom Bank v. Terry, the court held that the defendant purposefully availed himself of the privileges of South Carolina law because he executed

8

multiples guaranties with a South Carolina bank, communicated "directly to officers and employees of the Bank . . . on multiple occasions with regard to the obligations under the Notes, related mortgages, and the Guaranties," made personal visits to the bank in South Carolina, and met in-person with the officers of the bank on multiple occasions. 2012 WL 3115929, at *3–4 (D.S.C. July 31, 2012). Also factoring into the court's decision was that the fact that guaranties were governed by South Carolina law. Id. at *4.

Here, the court instructed Producer Capital to file an amended complaint in which it "delineat[ed] which defendant did which thing in connection with which state, including South Carolina." ECF No. 44 at 12. Despite this clear instruction, the amended complaint did not do so. Producer Capital added just three additional general references to South Carolina, with now a total of four mentions of South Carolina. Producer Capital kept the language from its original complaint alleging that "the matters complained of took place in whole or in part in Charleston County, South Carolina, and the sums borrowed were to be repaid in Charleston County, South Carolina." ECF No. 46 ¶ 12. It then added to the preexisting phrase that the "loan agreements giving rise to this action were to be performed in whole or in part in Charleston County, SC" were also "funded from accounts held by South Carolina banks, with performance and repayment of the loans to be completed in South Carolina." Id. ¶ 10. Producer Capital newly alleged that Vegliante would direct any inquiries about the funding and the status of the loan documents to Producer Capital, which was located in South Carolina. Id. ¶ 18. The final mention of South Carolina was clarification that all of the contracts between Producer Capital and defendants "were to be performed in South Carolina." Id. ¶ 45.

All of these references to South Carolina are insufficient to establish purposeful availment because they simply show that defendants entered into a contract with a South Carolina resident without any reason to believe they could be haled into court in South Carolina. Producer Capital argues that specific jurisdiction exists because (1) the guaranty agreement were to be performed in South Carolina; (2) the loans were funded from accounts in South Carolina banks; and (3) communication about the loan was directed to Producer Capital, located in South Carolina. But these contacts are either too sporadic or described in too vague of a manner for the court to find that defendants purposefully availed themselves of the privilege of South Carolina law. While the fact that the guaranty agreement was to be performed in South Carolina weighs in favor of finding personal jurisdiction, the lack of other contacts with South Carolina weakens the significance of this fact. The amended complaint alleges that communication occurred between defendants and Producer Capital, but it does not explain where or how often the communications occurred or who called whom. Unlike the defendant in <u>CresCom Bank</u>, there are no specific allegations of multiple communications with defendants, in-person or otherwise. Also unlike the defendant in <u>CresCrom Bank</u>, there are no allegations here that any of the defendants ever visited Producer Capital in South Carolina. Moreover, unlike the agreement in <u>CresCom Bank</u>, the agreement here is governed by California law.

Considering the factors relied upon by the Fourth Circuit to determine if purposeful availment exists, the amended complaint falls short of establishing personal jurisdiction. Defendants do not maintain an office or own property in South Carolina. While Vegliante individually may have reached into South Carolina to solicit business

with Producer Capital, the amended complaint contains no details regarding whether any of the other defendants contacted Producer Capital or made in-person contact with Producer Capital in South Carolina. Producer Capital gives no information regarding the nature and extent of communication between Producer Capital and defendants.

In addition, the amended complaint does not indicate that defendants intended to engage in "significant or long-term business activities" with Producer Capital. <u>See also</u> <u>Ellicott Mach. Corp.</u>, 995 F.2d at 478 (requiring a "long-term relationship with continuing and wide-reaching contacts" with plaintiff to establish jurisdiction). Based on the court's review of the agreement, it appears that the agreement was created in January 2016 and was to be completed by October 2016. The agreement requires payment and transfer of tax credits without anything more to the relationship. It would be difficult to characterize this arrangement as "significant or long-term business activities," nor does it suggest a "long-term relationship with continuing and wide-reaching contacts." Finally, as mentioned above, the agreement states that California law governs. The facts supporting jurisdiction, that the agreement was to be performed in South Carolina and Vegliante solicited business from a South Carolina resident, cannot overcome the other factors against jurisdiction and the insufficient details in the amended complaint for the court to conclude that defendants purposefully availed themselves of the privileges of South Carolina law. As such, Producer Capital cannot establish that the court has specific jurisdiction over defendants, and the court grants defendants' motions to dismiss the amended complaint.

### B. Motion to Dismiss Cross-claim

Cross-claimants seek (1) a declaratory judgment clarifying their rights, obligations, and liabilities vis-à-vis defendants; (2) indemnity from defendants for any liability as a result of this suit; (3) damages for conversion for defendants' alleged failure to return to cross-claimants $1 million worth of equipment that was jointly owned; and (4) damages for unjust enrichment as a result of defendants' alleged failure to return the equipment. Defendants argue the cross-claim should be dismissed because there is no personal jurisdiction, the cross-claim fails to state a claim, and any ruling on the cross-claim would interfere with the Pennsylvania state action filed by defendants.[5]

As discussed above, there are insufficient allegations in the complaint to establish personal jurisdiction in South Carolina over defendants. The cross-claim does not contain any allegations about any relation to South Carolina, and based on the underlying complaint, it appears that any interaction between defendants and cross-claimants would not have occurred in South Carolina. Therefore, the court dismisses the cross-claim for lack of personal jurisdiction.[6]

---

[5] In their motion to dismiss the cross-claim, defendants also raise the argument that cross-claimants previously argued that the complaint should be dismissed for lack of personal jurisdiction, and under the theory of estoppel, they should be barred from now arguing that the court has personal jurisdiction. Cross-claimants respond that they were able to change their position because the amended complaint contains new facts that support personal jurisdiction; however, in light of the discussion above, the court find this to be unconvincing.

[6] At the hearing on the motions, the parties argued that this court was the best forum to hear this case, mentioning an aversion to Pennsylvania state court. As the court pointed out at the hearing, personal jurisdiction is not based on the convenience of the parties. Moreover, the court sees no reason why the suit could not be filed in federal court in Pennsylvania, where it would be more likely for Producer Capital to establish jurisdiction over defendants.

## IV. CONCLUSION

For the foregoing reasons, the court grants the motions to dismiss the complaint, ECF Nos. 49 and 55, and the motion to dismiss the cross-claim, ECF No. 61.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**January 16, 2019
Charleston, South Carolina**